UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

SOUTHERN DIVISION

| | |
|---|---|
| ESTEBAN CHAVEZ-CRUZ,<br><br>            Movant,<br><br>   vs.<br><br>UNITED STATES OF AMERICA,<br><br>           Respondent. | 4:16-CV-04157-KES<br><br><br>REPORT & RECOMMENDATION |

**INTRODUCTION**

Esteban Chavez-Cruz has filed a *pro se* motion to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255. <u>See</u> Docket No. 1.[1]  Now pending is a motion to dismiss by respondent the United States of America ("government"). <u>See</u> Docket No. 36.  Mr. Chavez-Cruz filed a response to the motion. <u>See</u> Docket No. 40.  This matter has been referred to this magistrate judge pursuant to 28 U.S.C. § 636(b)(1)(A) & (B) and the October 16, 2014, standing order of the Honorable Karen E. Schreier, United States District Judge.

**FACTS**

**A.    Pretrial**

Mr. Chavez-Cruz was charged in an indictment with conspiracy to distribute methamphetamine. <u>See</u> <u>United States v. Chavez-Cruz</u>, CR No. 14-

---

[1] Within this opinion the court cites to documents in Mr. Chavez-Cruz's civil habeas case as well as documents in his underlying criminal case.  Documents filed in his 2255 civil case will be cited by the court's docket number for that document.  Documents filed in his criminal case will be cited "CR No."

40021, Docket No. 2.  Mr. Chavez-Cruz made his initial appearance on February 11, 2014, at which time counsel was appointed to represent him.  See CR Docket Nos. 5 & 7.  On March 4, 2014, Michael W. Hanson filed his notice of appearance as retained counsel on behalf of Mr. Chavez-Cruz.  CR Docket No. 16.  No pretrial motions were filed.

**B.    Jury Trial**

A jury was held on August 12-13, 2014.  During that trial, the government called as a witness Sergeant Shawn Haken of the Jackson County Sheriff's Office in Jackson County, Minnesota.  See CR Docket No. 67 at pp. 25-37.  Sgt. Haken was involved in executing a search warrant at Mr. Chavez-Cruz's home on January 23, 2014.  Id. at p. 26.

On cross-examination, Sgt. Haken testified the defendant, his wife and children lived in the home that was searched.  Id. at p. 31-32.  At the time of the search, the defendant was not home, only his family was there.  Id. at p. 35.  Counsel asked whether Sgt. Haken found the family in the downstairs area of the house, to which Sgt. Haken assented.  Id.  Counsel then asked if the furnace in the house was working.  Id.  Sgt. Haken stated it was not.  Id.  Defense counsel then asked if the weather during that time frame had been in the range of 20 to 30 degrees below zero, and Sgt. Haken agreed it had.  Id.  Counsel elicited testimony that the only source of heat was an open heater hooked up to a propane tank and the oven door.  Id.

After Sgt. Haken, other witnesses including Mr. Chavez-Cruz were briefly questioned about the lack of a working furnace in the home.  This testimony was not objected to.

After Sgt. Haken testified, Dan Louwagie of the Minnesota Bureau of Criminal Apprehension testified.  Mr. Louwagie was involved in the execution of the search warrant at Mr. Chavez-Cruz's house in Heron Lake, Minnesota, on January 23, 2014.  Id. at pp. 38-39.  Among the items found were a receipt from a Sioux Falls McDonald's restaurant dated January 22, 2014, at 9:21 a.m.  Id. at p. 55.  In a hidden compartment in the floor in an upstairs bedroom police discovered a blue and white plastic container wrapped with black electrical tape containing meth. pp. 57-60.  Also in the hidden compartment police found a military-style ammo can containing three more clear plastic containers of meth with pink lids.  Id. at pp. 47-49, 60-63, 67, 77.

In a second hidden compartment in the floor of the same bedroom, police found $47,000 in cash and $2,420 in cash in an envelope in a desk.  pp. 51, 64-65.  Also in the second compartment were two packages of marijuana wrapped in plastic wrap.  Id. at p. 66.  Also in the same location police found a 9 millimeter (mm) handgun, a shotgun, and rifle along with two magazines and four boxes of ammunition.  Id. at pp. 66-67, 70-72.  Another bundle of marijuana was found in a red cooler on a shelf, wrapped similarly to the marijuana found in the floor.  Id. at pp. 75-76.

Dan Louwagie interviewed Mr. Chavez-Cruz the morning after the search.  Id. at p. 78.  Mr. Chavez-Cruz denied knowledge of any drugs in his home, although he admitted he had lived in that location for two years.  Id. at pp. 79-81.  He also denied knowledge of any meth in the van he was driving, which van he identified as belonging to him.  Id. at pp. 81-82.

Michael Roemeling was also a witness for the prosecution. <u>See</u> CR Docket No. 67 at pp. 95-111. Mr. Roemeling testified he was involved in the distribution of methamphetamine in Sioux Falls, South Dakota, in the summer of 2013. <u>Id.</u> at p. 97. Mr. Roemeling testified he received the methamphetamine he distributed from Mr. Chavez-Cruz after meeting him at a friend's house. <u>Id.</u> Mr. Roemeling testified Mr. Chavez-Cruz spoke only broken English, but that he knew enough "key words" to get a drug deal done. <u>Id.</u> at pp. 97-98. After they met, Mr. Chavez-Cruz started "fronting" methamphetamine to Mr. Roemeling—providing the drugs on credit to be paid for at a later time. <u>Id.</u> at p. 98. Mr. Chavez-Cruz eventually fronted Mr. Roemeling up to three ounces of meth at a time, once or twice a week. <u>Id.</u> Mr. Roemeling testified that he had met with Mr. Chavez-Cruz at Roemeling's house in Sioux Falls and also at a McDonald's restaurant in Sioux Falls. <u>Id.</u> at p. 111.

Mr. Roemeling testified he was arrested for possession of meth in August, 2013. <u>Id.</u> at p. 99. In September, 2013, his home was searched pursuant to a search warrant and additional meth was found there and he was arrested again. <u>Id.</u> at pp. 99-100.

On cross-examination defense counsel asked Mr. Roemeling if, during the search of his house, a Roger King showed up at the house to purchase meth. <u>Id.</u> at p. 105. Mr. Roemeling responded: "No. He was my—he was living with me at the time because my leg had gotten broken." <u>Id.</u>

Defense counsel then attempted to undermine Mr. Roemeling's credibility by showing after he had been released on bond in August, 2013, he continued selling meth. Id. at p. 109. Mr. Roemeling explained why:

> Well, to be perfectly honest with you, I had a broken leg at the time. And I was scared because I didn't know who broke my leg for sure. I didn't know if it was Chavez and some of his friends or I didn't know if it was someone that I was selling to. And I kept on— I continued to do what I was doing to try to do my own investigation to find out who broke my leg.

Id. at pp. 109-10.

Counsel restated Mr. Roemeling's explanation: "So now we're hearing that you engaged in this criminal activity because you wanted to do your own investigation?" Id. at p. 110. Mr. Roemeling agreed. Counsel then asked, "And that justified what you were doing?" Id. Mr. Roemeling answered:

> I'm not saying it justified it in any way, shape or form. I just was very scared to call the police because if anyone knows anything about Spanish people it's don't call the cops on them. And I didn't—if they were responsible for my leg being broke, I didn't want it to be worse the next time. I was very scared. I'm still scared about it right now. I was beaten from head to toe. My leg was broken and they stole my cell phones.

Id. Defense counsel made no objection to this testimony. Id.

Scott Blewett, Jr. also testified for the government. Id. at p. 111. Mr. Blewett testified he first met Mr. Chavez-Cruz in September or October of 2013 at the Microtel Hotel in Sioux Falls. Id. at pp. 113-14. On that first occasion, Mr. Blewett purchased two 8-balls of meth from Mr. Chavez-Cruz for $350 cash. Id. at p. 114. Thereafter, about a month later Mr. Blewett drove to Mr. Chavez-Cruz's house in Heron Lake, Minnesota, to make arrangements to buy more meth. Id. at pp. 116-17.

Mr. Blewett then had multiple contacts with Mr. Chavez-Cruz on multiple occasions, sometimes in Heron Lake and sometimes in Sioux Falls. Id. at pp. 117-18.  The two men sometimes socialized, driving around together and going to McDonald's to eat.  Id.  Mr. Blewett continued to obtain meth at regular intervals from Mr. Chavez-Cruz.  Id. at pp. 118-19.  Eventually, Mr. Blewett became Mr. Chavez-Cruz's driver when Chavez-Cruz was making meth deliveries, replacing Levi, who was Mr. Chavez-Cruz's previous driver.  Id. at p. 119.

Mr. Blewett testified Mr. Chavez-Cruz came to Sioux Falls to conduct drug business three to four times per week and Mr. Blewett would drive him around on these occasions.  Id. at p. 130.  Each time he came to Sioux Falls Mr. Chavez-Cruz would bring 2 to 5 ounces of meth with him to distribute.  Id. at p. 133.

The most meth Mr. Blewett personally saw Mr. Chavez-Cruz in possession of was 5 ounces.  Id. at p. 131.  He testified his dad saw Mr. Chavez-Cruz in possession of 50 pounds of meth hidden in the hole in the floor of the upstairs bedroom of his Heron Lake home.  Id. at p. 152. Mr. Blewett visited Mr. Chavez-Cruz's home frequently and did some work on the home to pay a drug debt he owed.  Id. at pp. 150-52.  Mr. Blewett testified no one ever was living in the upstairs bedroom and that Mr. Chavez-Cruz kept the door to that bedroom locked all the time.  Id. at p. 152.

On December 7, 2013, Mr. Chavez-Cruz and Mr. Blewett were together in a vehicle just outside the Red Rock Inn in Sioux Falls when they were arrested. Id. at p. 120.  Mr. Blewett testified the two of them had been making meth

deliveries in Sioux Falls together and were just getting ready to head back to Heron Lake. Id. at pp. 120-21. At the time they were stopped, Mr. Blewett had a little bit of drugs on his person and Mr. Chavez-Cruz had none. Id.

On January 22, 2014, Mr. Blewett was arrested again, this time in a room at the same Red Rock Inn. Id. at pp. 121-22. On that occasion he cooperated with the police and told them the considerable information he had amassed about Mr. Chavez-Cruz's drug distribution operation. Id. at p. 122. Among the things Mr. Blewett told police was that Mr. Chavez-Cruz had meth stored at this house in an upstairs bedroom on the second floor of his house. Id. at pp. 123-24. Specifically, Mr. Blewett described a hidden hole in the floor of the upstairs bedroom in which Mr. Chavez-Cruz secreted drugs. Id. at pp. 125-26. Mr. Blewett himself did not see the hiding hole, but his dad, with whom he was in the drug distribution business, saw it and described it to Mr. Blewett. Id. Mr. Blewett described seeing drugs in Mr. Chavez-Cruz's upstairs bedroom stored in a clear plastic container with a pink lid. Id. at pp. 126-27. Mr. Chavez-Cruz also showed Mr. Blewett a firearm in a desk drawer in this upstairs bedroom. Id. at p. 127.

Mr. Blewett testified that Mr. Chavez-Cruz had nicknames for him and his dad. Id. at 156. Mr. Chavez-Cruz called Mr. Blewett "Junior" and called his dad "Blue." Id.

Special Agent Dan Byron with the South Dakota Division of Criminal Investigation also testified for the government. See CR Docket No. 67-1 at p. 4. Agent Byron participated in the search of Mr. Chavez-Cruz's home in Heron Lake. Id. at pp. 5-6. As he and other police were leaving the home, they saw

Mr. Chavez-Cruz approaching the house in his van and decided to conduct a traffic stop.  Id. at pp. 6-7.  The officers stopped Mr. Chavez-Cruz and ordered him to exit the van.  Id. at pp. 8-10.  Agent Byron could see Mr. Chavez-Cruz looking at the officers in his driver's side mirror and digging in the center console of the van.  Id. at p. 10.

Mr. Chavez-Cruz did not voluntarily exit the van.  Id. at pp. 10-11. Police had to stage a takedown of the van, parking an armored vehicle in front of the van to block its exit.  Id.  Officer repeatedly tried to get Mr. Chavez-Cruz to exit the van.  Id.  Finally, after a 3-hour standoff, Mr. Chavez-Cruz gave up and exited the van.  Id.  After Mr. Chavez-Cruz surrendered, his van was searched.  Id. at pp. 111-14.  Police found a cell phone in a destroyed condition, a notebook that had been all ripped up, and a wrinkled up plastic baggie with meth residue in it.  Id.

Deputy Donald Schoenrock of the Jackson County, Minnesota Sheriff's Office testified for the government.  Id. at p. 15.  Following Mr. Chavez-Cruz's arrest, Deputy Schoenrock drove the defendant's van to a warm location to search it.  Id. at pp. 15-16.  He did not disturb any of the contents of the van. Id.

Special Agent Mark Minten with the Drug Enforcement Administration testified for the government.  Id. at p. 17.  He searched Mr. Chavez-Cruz's cell phone that was discovered in the upstairs bedroom of his home and discovered numerous drug-related communications from December, 2013, between Mr. Chavez-Cruz and "Blue"—Mr. Blewett, Junior's dad.  Id. at pp. 21-22, 40.

He also found drug-related communications between Mr. Chavez-Cruz and Levi and "Junior"—Mr. Blewett, Jr. Id. at pp. 22-23.

Agent Minten also obtained the serial number and the MIN[2] from the broken cell phone found in Mr. Chavez-Cruz's van on the day of his arrest following the search of his home. Id. at pp. 23-24. From this information, Agent Minten was able to obtain the toll records for the broken phone. Id. at pp. 24-26. From those records, Agent Minten verified there were numerous contacts between Mr. Blewett and Mr. Chavez-Cruz's phone. Id. The toll records for this phone found in Mr. Chavez-Cruz's van showed 935 phone calls from Mr. Blewett's cell phone to Mr. Chavez-Cruz's phone. Id. at p. 27. The records indicated 417 calls from Mr. Chavez-Cruz's phone to Mr. Blewett's phone. Id. at p. 28. The toll records also showed one phone call from Mr. Chavez-Cruz's phone to one of his children during the 3-hour standoff outside his home. Id. at p. 42.

Agent Minten testified his office attempted to reassemble the torn up pieces of paper from the notebook found in Mr. Chavez-Cruz's van on the date of his arrest. Id. at p. 29. Those pages showed drug money owed and paid by "Junior." Id. at pp. 29-30.

Agent Minten also testified the meth found in the search of Mr. Chavez-Cruz's house totaled just over 4 pounds or 1,883.4 grams. Id. at p. 40. Also, the meth was tested for purity and it was 99.3 percent pure. Id. at p. 37.

---

[2] A MIN is a mobile identification number.

In closing arguments, defense counsel painted a picture of Mr. Chavez-Cruz as an honest, hard-working person who could not have been involved in methamphetamine distribution:

> Look at the house that Esteban Chavez-Cruz lived in. It's not that of a big time drug dealer. It wasn't a very good house. It's not a house that a lot of you would even want to live in. He worked at Swift [meatpacking plant] in Worthington. He's worked there since 1988, cutting the neck bones or the shoulder bones out of hogs. There's no dispute he's been working there all that time. There's no dispute that he worked the night shift. He had to be work at 3, got off around 11:30. He couldn't have been in Sioux Falls. He said he worked six days a week and then also worked two Sundays each month cleaning out the cooler. Mr. Chavez could not have been prowling around in Sioux Falls on these nights that Mr. Blewett and Mr. Roemeling claim.

See CR Docket No. 67-1 at p. 134-35.

In its final instructions to the jury, the district court instructed that they must:

> Reach your verdict without discrimination. In reaching your verdict, you must not consider the defendant's race, color, religious beliefs, national origin, or sex. You are not to return a verdict for or against the defendant unless you would return the same verdict without regard to his race, color, religious beliefs, national origin, or sex.

See Docket No. 37 at p. 15. The jury found Mr. Chavez-Cruz guilty of conspiracy to distribute methamphetamine. See CR Docket Nos. 41 & 42.

## C.    Sentencing

Mr. Chavez-Cruz was sentenced on November 3, 2014. Prior to sentencing a presentence investigation report (PSR) was prepared. See CR Docket No. 48. The PSR calculated Mr. Chavez-Cruz's sentencing range under the United States Sentencing Guidelines (USSG) as follows. Mr. Chavez-Cruz was attributed a base offense level of 38 based on 1.5 kilograms of meth. Id. at

10

p. 6, ¶ 17.  Two points were added for possession of a dangerous weapon, yielding a total offense level of 40.  Id. at p. 7, ¶ 25.  Mr. Chavez-Cruz had 3 criminal history points, placing him in criminal history category II.  Id. at p. 8, ¶ 32.  An offense level of 40 coupled with a criminal history category of II yielded a USSG range of 324 to 405 months.  Id. at p. 11, ¶ 52.  The statute imposed a mandatory minimum term of imprisonment of 10 years (120 months) and a maximum term of life imprisonment.  Id. at p. 10, ¶ 51.

The PSR indicated that the base offense level under the USSG for Mr. Chavez-Cruz was about to be amended.  Id. at p. 13, ¶ 68.  The amendment would provide for a two-level reduction of the drug quantity table. Id.  Based on this imminent change to the USSG, the PSR reported that the government would not object to a downward variance that basically sentenced Mr. Chavez-Cruz under the anticipated amendment instead of the existing guideline.  Id.

Counsel for Mr. Chavez-Cruz lodged 5 objections to the PSR.  See CR Docket No. 63 at p. 2.  The government made one objection to the PSR.  Id. The court overruled all of Mr. Chavez-Cruz's objections.  Id. at pp. 3-9.  The court also overruled the government's objection.  Id. at pp. 13-14.

The court did apply the two-level decrease in the base offense level under the amendment to the USSG, rendering Mr. Chavez-Cruz's total offense level a 38 instead of 40.  Id. at p. 14.  That changed his USSG range to 262 to 327 months' imprisonment.  Id.

Counsel for Mr. Chavez-Cruz addressed the court.  Id. at pp. 15-16.  He emphasized Mr. Chavez-Cruz's relatively minor criminal record and his family,

especially his six children.  Id. at p. 15.  Furthermore, counsel pointed out Mr. Chavez-Cruz had always been employed.  Id. at pp. 15-16.  Finally, as a non-citizen resident alien, counsel pointed out Mr. Chavez-Cruz would almost certainly be deported after serving his sentence, so there was no need to fashion a sentence to protect the public.  Id. at p. 16.

Mr. Chavez-Cruz addressed the court, denying his guilt, stating it was unfair what was happening to him, and pleading to be reunited with his family.  Id. at p. 17-19.  The court queried him about two separate occasions when he was the subject of a traffic stop.  Id.  Both times Mr. Chavez-Cruz was found with meth in the vehicle and a large amount of cash on his person.  Id.  As to both occasions, Mr. Chavez-Cruz stated the meth did not belong to him and he did not know it was in the car.  Id.  He had varying explanations for the cash.  Id.

Mr. Chavez-Cruz's wife testified.  Id. at pp. 20-22.  She stated on two separate occasions men came to her house and busted in and threatened her and her children.  Id.  She said she had no means of supporting herself and her children without Mr. Chavez-Cruz.  Id.

The government asked the court to protect the public from Mr. Chavez-Cruz, emphasizing that he was not a youngster, but 52 years old.  Id. at pp. 22-24.  The government also pointed out that Mr. Chavez-Cruz had placed his family in danger.  And the government pointed out Mr. Chavez-Cruz's lies at trial and at sentencing.  Id.

The court expressed sympathy for Mr. Chavez-Cruz's family.  Id. at p. 24.  The court noted that he had $50,000 in cash hidden in the floorboards of his

house along with over four pounds of meth, but he did not provide any money to his wife so that they could heat the house in January, instead his wife had to rely on heat from the oven.  Id.  The court found Mr. Chavez-Cruz's denials about knowing about the drugs or guns to be "highly unlikely."  Id.  The court concluded a sentence at the bottom end of Mr. Chavez-Cruz's USSG range to be appropriate.  Id. at p. 25.  The district court sentenced Mr. Chavez-Cruz to 262 months' imprisonment and 5 years' supervised release.  CR No. 51 & 63.

**D.    Direct Appeal**

Mr. Chavez-Cruz filed a direct appeal.  CR No. 53.  Attorney James Eirinberg was appointed to represent him on appeal.  CR No. 59.  In a *per curiam* opinion dated August 28, 2015, the Eighth Circuit Court of Appeals affirmed his conviction.  See United States v. Chavez-Cruz, 612 Fed. Appx. 871 (8th Cir. 2015).

Counsel for Mr. Chavez-Cruz raised three issues on appeal:  (1) he argued that Roemeling's statement about "Spanish people" invited the jury to convict him on the basis of a racial stereotype that Mexicans are violent drug dealers; (2) he argued the testimony regarding the fact that he housed his family in a house in the Minnesota winter without a working furnace was a government strategy to portray him as an evil man; and (3) he argued his sentence was unreasonable because the sentencing court did not specify any aggravating factors and did not consider the factors from 18 U.S.C. § 3553(a) on the record.  Id. at pp. 872-73.

The Eighth Circuit rejected all three arguments.  Id. at pp. 872-74. Given the lack of objection to the two evidentiary issues (and the fact that it

was defense counsel, not the government which elicited the testimony), the court found no plain error.  Id.  The furnace issue was, the court held, more likely a defense strategy to try to portray Mr. Chavez-Cruz as a poor, hardworking fellow.  Id.

As to the "Spanish" testimony by Roemeling, the court noted that the statement was spontaneous and unobjected to.  Id.  Furthermore, the district court instructed the jury not to consider Mr. Chavez-Cruz's race or national origin.  Id.  Thus, there was, again, no plain error.  Id.

Regarding the sentencing, the court stated that district courts are not required to go through each § 3553(a) factor on the record in every case.  Id.  Furthermore, Mr. Chavez-Cruz's appellate counsel did not claim a procedural sentencing error in his statement of the sentencing issue presented on appeal.  Id.

Mr. Chavez-Cruz's final sentencing argument was that the court should have imposed the mandatory minimum sentence of 120 months.  Id.  This would be more than sufficient to achieve the goals of punishment, deterrence, and protection of the public.  Id.  The Eighth Circuit disagreed.  Id.  The district court had considered the PSR, heard testimony from Mr. Chavez-Cruz as well as both counsel, and pronounced a sentence within the USSG range.  Id.  Thus, the court held the sentence was presumptively reasonable.  Id.

The Eighth Circuit issued its mandate on September 22, 2015, making its decision final.  Mr. Chavez-Cruz's judgment became final 90 days from that date, which would be December 21, 2015.  He then had until December 21, 2016, to file his § 2255 motion.  See 28 U.S.C. § 2255(f).

14

**E.    Motion for Reduced Sentence**

On February 10, 2016, Mr. Chavez-Cruz filed a motion asking the district court to reduce his sentence.  See CR Docket No. 80.  He argued that Amendment 782 to the USSG should be applied to his case and his sentence reduced.  Id.

The district court denied the motion.  See CR Docket No. 82. Amendment 782 had gone into effect two days *prior* to Mr. Chavez-Cruz's sentencing and the district court had applied that amendment to reduce Mr. Chavez-Cruz's base offense level.  Id.  Mr. Chavez-Cruz was not entitled to any further reduction of his sentence.  Id.

**F.    Mr. Chavez-Cruz's § 2255 Motion**

Mr. Chavez-Cruz timely filed his current motion to vacate, correct or set aside his sentence on November 7, 2016.  See Docket No. 1.  Mr. Chavez-Cruz alleges four claims of ineffective assistance of both trial and appellate counsel:

1.  Mr. Chavez-Cruz's Sixth Amendment right to effective assistance of counsel was violated when counsel failed to object to Michael Roemeling's testimony about Mr. Chavez-Cruz's ethnicity, thus forfeiting a review on appeal of the merits of this issue.

2.  Mr. Chavez-Cruz's Sixth Amendment right to effective assistance of counsel on appeal was violated when counsel failed to raise as an issue the district court's overruling of defense trial counsel's hearsay objection to Scott Blewett's testimony.

3.  Mr. Chavez-Cruz's Sixth Amendment right to effective assistance of counsel at sentencing was violated when trial counsel failed to object

to the district court's failure to consider mitigating evidence in

imposing a sentence under 18 U.S.C. § 3553(a).

4. Mr. Chavez-Cruz's Sixth Amendment right to effective assistance of

counsel on appeal was violated when appellate counsel failed to raise

the issue on appeal of the district court's error in denying defense trial

counsel's motion for judgment of acquittal.

See Docket No. 4.

The government moves to dismiss Mr. Chavez-Cruz's § 2255 motion

without holding an evidentiary hearing, arguing that he failed to state a claim

on which relief can be granted.  See Docket No. 36.

## DISCUSSION

### A.    Scope of a § 2255 Motion

Section 2255 of Title 28 of the United States Code was enacted to

supersede habeas corpus practice for federal prisoners.  Davis v. United States,

417 U.S. 333, 343-44 (1974).  Prior to the enactment of § 2255, habeas claims

had to be brought in the district where the prisoner was confined, resulting in

overburdening those districts where federal correctional institutions were

located and presented logistical issues because the record in the underlying

criminal case were often in a distant location.  United States v. Hayman, 342

U.S. 205, 212-16 (1952).  The enactment of § 2255 resolved these issues by

requiring that the motion be filed in the sentencing court.  Id.

The scope of a § 2255 motion is seemingly broader than the scope of a

habeas petition, the latter of which is typically limited to allegations of a

constitutional dimension.  Section 2255 allows a federal prisoner to "vacate, set

16

aside or correct" a federal sentence on the ground that "the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack." See 28 U.S.C. § 2255. Where the allegation for relief is *not* based on a violation of a Constitutional or federal statutory right or an assertion that the court was without jurisdiction, the Supreme Court has read a "fundamentality" requirement into § 2255. Relief is available for only those errors which constitute a "fundamental defect which inherently results in a complete miscarriage of justice" or "an omission inconsistent with the rudimentary demands of fair procedure." Hill v. United States, 368 U.S. 424, 428 (1962); see Peguero v. United States, 526 U.S. 23, 27-30 (1999).

Generally, petitioners are precluded from asserting claims pursuant to § 2255 that they failed to raise on direct appeal. United States v. Frady, 456 U.S. 152, 167-68 (1982); McNeal v. United States, 249 F.3d 747, 749 (8th Cir. 2001). When a § 2255 petitioner asserts a claim that is procedurally defaulted because it was not raised on direct appeal, the claim can only proceed after the petitioner has shown either: (1) actual innocence or (2) that the procedural default should be excused because there was both cause for the default and actual prejudice to the petitioner. Bousley v. United States, 523 U.S. 614, 621-22 (1998); McNeal, 249 F.3d at 749. Therefore, barring a claim of actual innocence, a petitioner must show both cause for why he failed to raise an issue on direct appeal as well as actual prejudice caused by the alleged errors.

17

Appellate courts generally refuse to review claims of ineffective assistance of counsel on direct appeal; such claims are, therefore, properly addressed in a 28 U.S.C. § 2255 motion for the first time.  See United States v. Campbell, 764 F.3d 880, 892-93 (8th Cir. 2014); United States v. Lee, 374 F.3d 637, 654 (8th Cir. 2004) (ineffective assistance of counsel claims are not generally cognizable on direct appeal and will be heard only to prevent a miscarriage of justice or in cases where the district court has developed a record on the issue).  Therefore, no procedural default analysis is required before examining petitioner's claims of constitutionally-deficient counsel.

**B.**    **Mr. Chavez-Cruz is Barred from Relitigating Issues Raised on Appeal**

Although Mr. Chavez-Cruz couches his four claims for relief under the umbrella of "ineffective assistance of counsel," he also argues in his memorandum that "Chavez-Cruz was denied due process and the right to a fair jury trial due to the prejudicial taint caused by [Michael] Roemling's unconstitutional comment" about the "Spanish."  See Docket No. 4 at p. 5.

"With rare exceptions, § 2255 may not be used to relitigate matters decided on direct appeal." Sun Bear v. United States, 644 F.3d 700, 702 (8th Cir. 2011) (*en banc*) (citing Davis v. United States, 417 U.S. 333, 346-47 (1974)); Wiley, 245 F.3d at 752; United States v. Wiley, 245 F.3d 750, 752 (8th Cir. 2001); United States v. McGee, 201 F.3d 1022, 1023 (8th Cir. 2000) (*per curiam*).  Issues may be relitigated in a § 2255 motion if the error constitutes "a fundamental defect which inherently results in a complete miscarriage of justice." Davis, 417 U.S. at 346-47; Sun Bear, 644 F.3d at 704.  They may also be relitigated where the petitioner presents convincing new evidence of actual

18

innocence.  Wiley, 245 F.3d at 752 (citing Weeks v. Bowersox, 119 F.3d 1342, 1350-51 (8th Cir. 1997) (*en banc*)).

Here, Mr. Chavez-Cruz offers no new evidence and he has not shown that there was a fundamental defect which inherently resulted in a complete miscarriage of justice.  The Eighth Circuit already decided this issue and it decided the issue against Mr. Chavez-Cruz because (1) the statement was brief and spontaneous and (2) the district court gave a cautionary instruction.  See Chavez-Cruz, 612 Fed. Appx. at 872.  This distinguished Mr. Chavez-Cruz's case from United States v. Vue, 13 F.3d 1206, 1213 (8th Cir. 1994), where there had been extensive evidence introduced by the government which "clearly invited the jury" to consider defendants' race in deciding the case.  Id. (quoting Vue, 13 F.3d at 1213).  Accordingly, the court concludes there was not a fundamental defect and Mr. Chavez-Cruz will not be allowed to relitigate this issue.

The issue of whether counsel was ineffective in failing to object to Roemeling's testimony, however, is preserved because it was not raised on appeal.  That issue is addressed below.

## C.    Ineffective Assistance of Counsel

### 1.    The Strickland Standard

Unlike the above-discussed claims, claims of ineffective assistance of counsel are generally not heard on direct appeal.  Campbell, 764 F.3d at 892; Lee, 374 F.3d at 654.  Therefore, ineffective assistance claims can permissibly be raised for the first time in a § 2255 motion.

The Sixth Amendment of the Constitution of the United States affords a criminal defendant with the right to assistance of counsel.  U.S. Const. amend. VI.  The Supreme Court "has recognized that 'the right to counsel is the right to effective assistance of counsel.' "  Strickland v. Washington, 466 U.S. 668, 698 (1984) (citing McMann v. Richardson, 397 U.S. 759, 771, n.14 (1970)).  Strickland is the benchmark case for determining if counsel's assistance was so defective as to violate a criminal defendant's Sixth Amendment rights and require reversal of a conviction.  Id. at 687.

"When a convicted defendant complains of the ineffectiveness of counsel's assistance, the defendant must show that counsel's representation fell below an objective standard of reasonableness."  Id. at 687-688.  The defendant must also show that counsel's unreasonable errors or deficiencies prejudiced the defense and affected the judgment.  Id. at 691.  The defendant must show, "there is a reasonable probability that, absent the errors, the factfinder would have had a reasonable doubt respecting guilt."  Id. at 695.  In sum, a defendant must satisfy the following two-prong test.  Id. at 687.

> First, the defendant must show that counsel's performance was deficient.  This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment.  Second, the defendant must show that the deficient performance prejudiced the defense.  This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.  Unless a defendant makes both showings, it cannot be said that the conviction or death sentence resulted from a breakdown in the adversary process that renders the result unreliable.

Id.

"There is a presumption that any challenged action was sound trial strategy and that counsel rendered adequate assistance and made all significant decisions in the exercise of professional judgment." <u>Hall v. Luebbers</u>, 296 F.3d 685, 692 (8th Cir. 2002). It is the petitioner's burden to overcome this presumption, and a "petitioner cannot build a showing of prejudice on a series of errors, none of which would by itself meet the prejudice test." <u>Id.</u>

Counsel's conduct must be judged by the standards for legal representation which existed at the time of the representation, not by standards promulgated after the representation. <u>Bobby v. Van Hook</u>, 558 U.S. 4, 7-9 (2009). American Bar Association standards and similar directives to lawyers are only guides as to the reasonableness of counsel's conduct, they are not its definitive definition. <u>Id.</u> The Supreme Court distinguishes between those cases in which the new evidence "would barely have altered the sentencing profile presented to the sentencing judge," and those that would have had a reasonable probability of changing the result. <u>Porter v. McCollum</u>, 558 U.S. 30, 41 (2009).

In assessing the prejudice prong, it is important for courts to consider "the totality of the available mitigation evidence 'both that adduced at trial, and the evidence adduced in the habeas proceeding' " and "reweigh it against the evidence in aggravation." <u>Id.</u> at 40-41. It is not necessary for the petitioner to show "that counsel's deficient conduct more likely than not altered the outcome" of her case, only that there is "a probability sufficient to undermine confidence in [that] outcome." <u>Id.</u> at 44. Judicial scrutiny of attorney

performance is highly deferential, with a strong presumption that counsel's conduct falls within the range of reasonable professional conduct.  Strickland, 466 U.S. at 698.  The court now turns to each of Mr. Chavez-Cruz's four assertions that counsel was ineffective.

### 2.    Failure to Object to Roemeling's Testimony

Mr. Chavez-Cruz asserts trial counsel was ineffective for failing to object to Roemeling's testimony about "Spanish" people and failing to immediately move for a mistrial.  Because counsel failed to object at trial, the Eighth Circuit reviewed this issue only for "plain error."  The curative instruction telling the jury not to consider Mr. Chavez-Cruz's race or national origin was not given until well after the testimony was given.  By this time, Mr. Chavez-Cruz argues, the damage had been done with the jury and could not be undone.

Evidentiary issues are committed to the sound discretion of the district court.  United States v. Holmes, 822 F.2d 802, 804 (8th Cir. 1987).  If an evidentiary issue is preserved for appellate review by a contemporaneous objection, the issue is reviewed on appeal under the "abuse of discretion" standard.  United States v. Collier, 527 F.3d 695, 699 (8th Cir. 2008).  When no contemporaneous objection is made, alleged evidentiary errors are reviewed for "plain error."  United States v. Scofield, 433 F.3d 580, 586 (8th Cir. 2006).  The difference between the two standards are as follows:

> To obtain relief under a plain-error standard of review, the party seeking relief must show that there was an error, the error is clear or obvious under current law, the error affected the party's substantial rights, and the error seriously affects the fairness, integrity, or public reputation of judicial proceedings.

See United States v. Poitra, 648 F.3d 884, 887 (8th Cir. 2011).

> An "abuse of discretion will only be found if the district court's judgment was based on clearly erroneous factual findings or erroneous legal conclusions."  Applying "this standard, we will overturn a factual finding only if it is not supported by substantial evidence in the record, if it is based on an erroneous view of the law, or if we are left with a definite and firm conviction that an error was made."

Lopez v. United States, 790 F.3d 867, 871 (8th Cir. 2015) (citations omitted).

As can be seen, the difference on appeal of applying an abuse-of-discretion review or a plain-error review is very little.  Both standards are very demanding standards for an appellant to overcome.  Both standards require the appellate court to ask whether the lower court made a serious and clear error.

On direct appeal, the Eighth Circuit rejected the related issue whether the testimony from Mr. Roemeling deprived him of a fair trial by inviting the jury to decide the case based on Mr. Chavez-Cruz's Mexican ancestry.  See Chavez-Cruz, 612 Fed. Appx. at 872.  In large part, the Eighth Circuit's decision was based on the fact that the statement was isolated, spontaneous, and the district court gave a curative instruction.  Id.  For the same reasons, this court concludes trial counsel was not ineffective in failing to object to the testimony.

Again, "[t]here is a presumption that any challenged action was sound trial strategy and that counsel rendered adequate assistance and made all significant decisions in the exercise of professional judgment."  Hall, 296 F.3d at 692.  Here, Mr. Roemeling blurted out the offending statement in response to defense counsel's own question.  Counsel may well have not wanted to

object, thereby emphasizing the statement. By objecting, counsel would have further called the jury's attention to the statement, further injuring Mr. Chavez-Cruz's standing before the jury. By not objecting, and by receiving the curative instruction from the court which told the jury they could not take Mr. Chavez-Cruz's race or national origin into account in deciding the case, counsel got the best of both worlds. The harmful testimony was not reiterated and emphasized before the jury and the jury was correctly instructed as to the law. This court concludes that Mr. Chavez-Cruz has not overcome the presumption that counsel was exercising sound trial strategy.

In fact, trial counsel submitted sworn testimony in Mr. Chavez-Cruz's § 2255 matter attesting to the fact that his decision not to object was sound trial strategy. See Docket No. 20 at p. 1, ¶ 5. In counsel's estimation, Mr. Roemeling was not credible before the jury as his story was not believable, he wanted to blame everyone else for his problems, and his testimony was obviously being motivated by his desire to please the government to get a good "deal" on his own drug charges. Id. The court concludes trial counsel was not deficient in failing to object to Mr. Roemeling's statement.

In addition, Mr. Chavez-Cruz must show prejudice--that "there is a reasonable probability that, absent the errors, the factfinder would have had a reasonable doubt respecting guilt." Strickland, 466 U.S. at 695. Even if this court assumes an objection was lodged and a mistrial granted, the government would have presented all the same evidence in a subsequent trial that was presented at Mr. Chavez-Cruz's first trial, minus the statement about the proclivities of the "Spanish" from Mr. Roemeling.

The government's evidence in this case was overwhelming. This court cannot see any possibility that the factfinder would have had a reasonable doubt respecting Mr. Chavez-Cruz's guilt. Accordingly, the court concludes he has failed to demonstrate prejudice as well regarding this issue.

### 3.    Failure to Appeal Overruling of Hearsay Objection

At trial, government counsel asked its witness, Scott Blewett, Jr., what the largest amount of meth was that he had ever seen at Mr. Chavez-Cruz's house. See CR Docket No. 67 at 151. Mr. Blewett replied that he had never really seen it, but his dad did. Id. Defense counsel objected on the basis of hearsay. Id. The court overruled this objection and Mr. Blewett went on to testify that his dad had seen Mr. Chavez-Cruz with 50 pounds of meth. Id. at pp. 151-152. Mr. Blewett testified he and his dad were in the meth distribution business together. Id. Mr. Chavez-Cruz asserts his trial counsel was ineffective in failing to raise this issue on appeal.

If counsel had raised this issue on appeal, as discussed above, it would have been evaluated by the Eighth Circuit under the stringent "abuse of discretion" standard. Lopez, 790 F.3d at 871. Out of court statements by coconspirators during and in furtherance of a conspiracy are excluded from the definition of hearsay. See FED. R. EVID. 801(d)(2)(E). See also United States v. Spotted Elk, 548 F.3d 641, 661 (8th Cir. 2008) (citing United States v. Bell, 573 F.2d 1040, 1044 (8th Cir. 1978)) (outlining admissibility of hearsay statements of coconspirators in a conspiracy trial).

Mr. Blewett testified he and his dad were in business together selling meth. See CR Docket No. 67 at pp. 151-52. Mr. Blewett conspired to sell meth

with Mr. Chavez-Cruz, thus, all three of them—Mr. Blewett, Blewett's dad, and Mr. Chavez-Cruz—were coconspirators in the same drug conspiracy. The reason the court overruled defense counsel's hearsay objection is because the out of court statement by Mr. Blewett's dad simply is *not* hearsay under the Federal Rules of Evidence.    See FED. R. EVID. 801(d)(2)(E); Spotted Elk, 548 F.3d at 661; Bell, 573 F.2d at 1044.

Mr. Chavez-Cruz is not entitled to have every issue raised on appeal that he believes should have been raised. "The Sixth Amendment does not require that counsel raise every colorable or non-frivolous claim on appeal." New v. United States 652 F.3d 949, 953 (8th Cir. 2011) (citing Roe v. Delo, 160 F.3d 416, 418 (8th Cir. 1998)). "[A]bsent contrary evidence, we assume that appellate counsel's failure to raise a claim was an exercise of sound appellate strategy." Id. (quoting United States v. Brown, 528 F.3d 1030, 1033 (8th Cir. 2008)). "Experienced advocates since time beyond memory have emphasized the importance of winnowing out weaker arguments on appeal." Id. at 954 (quoting Brown, 528 F.3d at 1033).

Mr. Chavez-Cruz acknowledges that appellate counsel is afforded a "presumption that he decided which issues were most likely to afford relief on appeal." See Docket No. 4 at p. 10 (quoting Pruett v. Thompson, 996 F.2d 1560, 1568 (4th Cir. 1993)). Had appellate counsel raised this issue on appeal, it would have failed. First, it would have been reviewed under the demanding "abuse of discretion" standard discussed above. Second, there is a clear basis in the rules of evidence supporting the district court's ruling. Mr. Chavez-Cruz has failed to demonstrate that appellate counsel was ineffective for failing to

raise this losing appellate issue.  He has also failed to demonstrate he was prejudiced by appellate counsel's failure to raise this issue.  The court recommends denying habeas relief on this ground.

### 4.    Counsel Failed to Object at Sentencing

Mr. Chavez-Cruz argues trial counsel was ineffective in failing to object at his sentencing hearing when the district court committed "procedural error" by failing to consider the § 3553(a) sentencing factors.  Section 3553(a) of Title 18 provides as follows:

> The court shall impose a sentence sufficient, but not greater than necessary, to comply with the purposes set forth in paragraph (2) of this subsection.  The court, in determining the particular sentence to be imposed shall consider—
>
> (1) the nature and circumstances of the offense and the history and characteristics of the defendant;
>
> (2) the need for the sentence imposed—
>     (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
>     (B) to afford adequate deterrence to criminal conduct;
>     (C) to protect the public from further crimes of the defendant; and
>     (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;
> (3) the kinds of sentences available;
> (4) the kinds of sentence and the sentencing range established for—
>     (A) the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines . .
> * * *
> (5) any pertinent policy statement—
>     (A) issued by the Sentencing Commission . . .
>     * * *
> (6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and
> (7) the need to provide restitution to any victims of the offense.

See 18 U.S.C. § 3553(a).

At the sentencing hearing, the court heard mitigating evidence regarding Mr. Chavez-Cruz to the effect he had a wife and six children, that he lived an impoverished life style, that he was the sole financial supporter of his family, and that he had worked hard at a full-time job at a meat-packing plant for many years.  See CR Docket No. 63 at pp. 15-17.  The court also considered evidence that Mr. Chavez-Cruz had very little to no criminal history.  Id.

The court also considered that Mr. Chavez-Cruz would probably be deported following his service of his sentence.  Id.  Counsel for Mr. Chavez-Cruz argued that there was no need for the public to be protected from the defendant because he would not, in all likelihood, be in the United States.  Id. at p. 16.

There was also evidence discussed at the sentencing hearing that Mr. Chavez-Cruz possessed firearms in the same vicinity of his home—beneath the floorboards—where a large stash of 1.78 kilos of meth was discovered during a search.  Id. at pp. 5-7, 24.  The amount of meth found in Mr. Chavez-Cruz's house was an unusually large amount for the Sioux Falls area.  Id. at p. 24.

Evidence was introduced that Mr. Chavez-Cruz had on two prior occasions been stopped while driving a vehicle and that a subsequent search of each vehicle revealed the presence of meth.  Id. at pp. 17-20.  The court heard evidence that Mr. Chavez-Cruz was allegedly unaware of the presence of meth in the van on those two occasions.  Id.

Mr. Chavez-Cruz was invited to address the court and he accepted that invitation.  Id.  No limitations were placed on what Mr. Chavez-Cruz was allowed to tell the court.  Id.  Mr. Chavez-Cruz was also allowed to present evidence to the court from his wife.  Id. at pp. 20-22.  She told the court without her husband she had no money to buy food for her children or to heat their home.  Id.  She also told the court about two visits from men who came to her house and threatened her and her children.  Id.  The court also considered defendant's age, which was 52 years old, at the hearing.  Id. at p. 23.

In addition to testimony adduced at the sentencing hearing, the PSR also informed the court as to the offense conduct.  See CR Docket No. 48 at pp. 3-5. The PSR told about the defendant's conduct while being detained pretrial.  Id. at p. 3.

The PSR informed the court of the amount of drugs attributable to the defendant.  Id. at p. 5.  The PSR detailed Mr. Chavez-Cruz's criminal history, which consisted of three counts of driving while under the influence and one count of driving with a cancelled driver's license.  Id. at pp. 7-8.  The PSR told the court Mr. Chavez-Cruz had one pending, unresolved charge of possession of drugs in the fifth degree after he was found driving a vehicle in which 1.3 grams of meth and $6,452 dollars in cash were found.  Id. at p. 8.

The PSR informed the court of Mr. Chavez-Cruz's personal characteristics, including where he was born, who his family of origin was, his marital status and his children.  Id. at p. 9.  The PSR told the court of the defendant's physical, mental and emotional condition.  Id.  The PSR told the court Mr. Chavez-Cruz never used drugs, used alcohol only intermittently, did

not speak English fluently, had no formal education, and had been employed consistently since 1984. Id. at p. 10. The PSR told the court he had very little ability to pay a fine and no significant debts. Id.

Between the live testimony adduced or discussed at the sentencing hearing and the information presented in the PSR, the sentencing court had all the information necessary to evaluate the § 3553(a) factors.

In addition, the court had knowledge of the many drug cases it had sentenced itself, as well as the cases fellow judges in this district had sentenced. It was not necessary for the sentencing court to state each one of the § 3553(a) factors out loud and discuss each explicitly on the record. In this regard, the Eighth Circuit has said:

> As the Supreme Court has explained, "[t]he appropriateness of brevity or length, conciseness or detail, when to write, what to say, depends upon circumstances." "The law leaves much, in this respect, to the judge's own professional judgment." "[A] district court is not required to provide 'a full opinion in every case,' but must 'set forth enough to satisfy the appellate court that he has considered the parties' arguments and has a reasoned basis for exercising his own legal decisionmaking authority.' " Sentencing courts need not "categorically rehearse the § 3553(a) factors on the record, as long as it is clear that the court considered those factors." Nor have we required district courts to make specific findings on the record about each § 3553(a) factor. "[A]ll that is generally required to satisfy the appellate court is evidence that the district court was aware of the factors."

See United States v. Deegan, 605 F.3d 625, 629-30 (8th Cir. 2010) (citations omitted).

Here, the district court clearly satisfied the standard set forth above. The defendant's primary arguments were (1) that he was innocent, (2) that he was hard-working, (3) that he had never been in trouble with the law, and (4) that

his family needed his financial support.  The court heard this evidence and evaluated it.  As to (1), the court rejected defendant's protestations of innocence because on three occasions he had been found to be in a location where significant quantities of meth and cash were found together.  The court found Mr. Chavez-Cruz's assertion that he was not aware of the drugs or money in the floorboards to be disingenuous.  She also found his explanations about the cash in the vehicles to be incredible given the entire evidence from the trial.

As to (4), his family, the court expressed sympathy for the defendant's wife, but largely found this to be an aggravating, not a mitigating, circumstance.  The defendant by his actions had exposed his wife and children to imminent threats of harm.  Additionally, while the defendant had access to large amounts of cash, the court found it reprehensible that he would not spend some of that money to heat the house his family lived in.  Finally, comparing Mr. Chavez-Cruz's case with other similar cases that came before the court, the court found the defendant's case to be more deserving of punishment because such an unusually large amount of meth was involved.

The court considered (2) and (3), but did not accord them great weight because of the gravity of the defendant's actions.  This court notes that Mr. Chavez-Cruz was given the opportunity to address the court at his sentencing hearing and he did not raise any additional facts or information for the court to consider.

The "problem" at sentencing was *not* that the district court failed to consider the § 3553(a) factors, but that Mr. Chavez-Cruz did not agree with the

court's *evaluation of* those factors. Counsel made his arguments in favor of Mr. Chavez-Cruz. To object after having made his arguments and had those arguments rejected by the court would have served no purpose. The sentencing court's handling of the sentencing hearing satisfied the law both procedurally and substantively. Mr. Chavez-Cruz has failed to show counsel's performance was deficient or that he was prejudiced by counsel's failure to object. The court recommends dismissing ground three of Mr. Chavez-Cruz's § 2255 motion without granting relief on that ground.

### 5. Appellate Counsel Failed to Appeal the District Court's Denial of Trial Counsel's Motion for Judgment of Acquittal

Mr. Chavez-Cruz argues that appellate counsel was constitutionally ineffective for failing to raise on appeal the issue of whether the district court erred in denying trial counsel's motion for judgment of acquittal. As discussed above, asserting an ineffective assistance of counsel claim on the basis that appellate counsel failed to raise an issue is a tough hurdle. Even colorable or non-frivolous claims need not be raised on appeal. New, 652 F.3d at 953; Roe, 160 F.3d at 418. Appellate counsel's failure to raise a claim is subject to a heavy presumption of competent counsel's appellate strategy. Id. (quoting Brown, 528 F.3d 1030, 1033 (8th Cir. 2008)). An appeal can be fatally weakened by raising a plethora of weak issues. Id.

Appellate review of denial of motions for judgment of acquittal are conducted under the *de novo* standard of review as follows:

> We employ a strict standard of review regarding denials of motions for acquittal, viewing the evidence in the light most favorable to the guilty verdict, resolving all evidentiary conflicts in favor of the government, and accepting all reasonable inferences supported by

> the evidence.  A jury verdict will not be lightly overturned and we
> will reverse only if no reasonable jury could have found the
> defendant guilty beyond a reasonable doubt.  When reviewing the
> sufficiency of the evidence to support a conspiracy conviction, we
> will affirm if the record, viewed most favorably to the government,
> contains substantial evidence supporting the jury's verdict, which
> means evidence sufficient to prove the elements of the crime
> beyond a reasonable doubt.  In granting or denying the motion, the
> "district court has very limited latitude in ruling upon a motion for
> judgment of acquittal."

See United States v. Espinosa, 585 F.3d 418, 423 (8th Cir. 2009) (quoting

United States v. Thompson, 533 F.3d 964, 970 (8th Cir. 2008); and United

States v. Baker, 367 F.3d 790, 797 (8th Cir. 2004)).

Here, there was nothing deficient about Mr. Chavez-Cruz's appellate

counsel's decision not to appeal the denial of the motion for acquittal.  Given

the above-cited extremely high standard of review, and the overwhelming

abundance of evidence of guilt introduced at Mr. Chavez-Cruz's trial, there is

virtually no chance this issue could have resulted in a reversal on appeal.

In summary, the evidence showed the following.  A search warrant

executed at Mr. Chavez-Cruz's house revealed 1.78 kilos of meth concealed

beneath the floorboards along with almost $50,000 in cash and multiple guns.

Witnesses testified to numerous drug transactions with Mr. Chavez-Cruz

extending over a period of several months.

A search of two of Mr. Chavez-Cruz's cell phones showed hundreds of

communications between him and Mr. Blewett, Levi, and Mr. Blewett's dad.

There was also a call from Mr. Chavez-Cruz to one of his children during the

traffic stop standoff in January, 2014, establishing that the phone was

Mr. Chavez-Cruz's phone.

Mr. Chavez-Cruz was the subject of a traffic stop in December, 2013, and in January, 2014, following the search of his house.  On both occasions evidence of drug distribution was found in the van Mr. Chavez-Cruz occupied.

Mr. Blewett described a hiding place beneath the floorboards of the upstairs bedroom of Mr. Chavez-Cruz's Heron Lake home.  Police found a hidden hole just as Mr. Blewett had described.  Mr. Blewett visited Mr. Chavez-Cruz's home numerous times and also did some handiwork on the home to pay off a drug debt.  He testified no one lived in that upstairs bedroom and Mr. Chavez-Cruz kept the bedroom locked all the time.

Given this evidence, the district court had no grounds to grant the motion for judgment of acquittal.  If the issue had been appealed, the Eighth Circuit would have had no grounds to reverse on this issue.  Therefore, this court concludes Mr. Chavez-Cruz's appellate counsel was not deficient in raising this issue on appeal and that Mr. Chavez-Cruz has failed to demonstrate prejudice as a result of the fact this issue was not presented on appeal.  This ground for relief should be denied.

**D.    No Evidentiary Hearing is Warranted**

"While '[a] petitioner is entitled to an evidentiary hearing on a section 2255 motion unless the motion and the files and the records of the case conclusively show that [he] is entitled to no relief,' no hearing is required 'where the claim is inadequate on its face or if the record affirmatively refutes the factual assertions upon which it is based.' " New v. United States, 652 F.3d 949, 954 (8th Cir. 2011) (quoting Anjulo-Lopez v. United States, 541 F.3d 814, 817 (8th Cir. 2008)).

"A district court may deny an evidentiary hearing where (1) accepting the petitioner's allegations as true, the petitioner is not entitled to relief, or (2) 'the allegations cannot be accepted as true because they are contradicted by the record, inherently incredible, or conclusions rather than statements of fact.' " Guzman-Ortiz v. United States, 849 F.3d 708, 715 (8th Cir. 2017) (quoting United States v. Sellner, 773 F.3d 927, 929-30 (8th Cir. 2014)).  The Eighth Circuit held no evidentiary hearing was necessary in the Guzman-Ortiz case because the petitioner mischaracterized the record in his challenges to his lawyer's representation during closing argument and sentencing.  Id. Therefore, "no further factual development of the record was necessary" before denying those claims.  Id.

The district court's denial of an evidentiary hearing in Adams v. United States, 869 F.3d 633 (8th Cir. 2017), was also affirmed.  Adams claimed his lawyer just told him to answer all the district court's questions at the plea hearing "yes."  Adams said he did not understand the plea documents or the plea proceeding, his lawyer never explained them to him, he only signed the documents because his lawyer told him to, said his lawyer blindly urged him to plead guilty and to answer all the judge's questions at the plea hearing by saying "yes."  Id. at 635.  Adams' lawyers submitted affidavits that backed up the record, but were not consistent with Adams' affidavit submitted in his § 2255 motion.  Id.  The district court denied the § 2255 motion without a hearing.  Id. at 634.

The Eighth Circuit said Adams' contention that his lawyer said to answer all the judge's questions "yes" was belied by the transcript of the plea hearing

35

where he answered multiple questions "no." Id. at 635.  Since he chose between "yes" and "no" answers when answering the court's questions, the court was permitted to hold Adams to his sworn testimony at the plea hearing that he had read the plea documents, that they were accurate, that he had discussed them with counsel, and that he understood them.  Id.

The court concludes here that Mr. Chavez-Cruz has similarly not made a showing sufficient to entitle him to an evidentiary hearing.  His claims either fail as a matter of law, or are flatly contradicted by the record.  Accordingly, this court recommends his motion to vacate, set aside, or correct his sentence be denied without holding an evidentiary hearing.

## CONCLUSION

Based on the foregoing facts, law and analysis, this magistrate judge respectfully recommends that the government's motion to dismiss [Docket No. 36] be granted and that Mr. Chavez-Cruz's § 2255 motion [Docket No. 1] be dismissed with prejudice.

## NOTICE OF RIGHT TO APPEAL

The parties have fourteen (14) days after service of this Report and Recommendation to file written objections pursuant to 28 U.S.C. § 636(b)(1), unless an extension of time for good cause is obtained.  See FED. R. CIV. P. 72; 28 U.S.C. § 636(b)(1)(B).  Failure to file timely objections will result in the waiver of the right to appeal questions of fact.  Id.  Objections must be timely and specific in order to require de novo review by the District Court.

36

Thompson v. Nix, 897 F.2d 356 (8th Cir. 1990); Nash v. Black, 781 F.2d 665 (8th Cir. 1986).

     DATED October 4, 2017.

            BY THE COURT:

            VERONICA L. DUFFY
            United States Magistrate Judge